■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM PRIVOTT, Appellant.—Appeal from a judgment of the County Court of Albany County, rendered February 14, 1978, upon a verdict convicting defendant of the crime of robbery in the second degree and sentencing him to an indeterminate term of imprisonment with a maximum of 15 years and a minimum of five years. At approximately 9:10 P.M. on October 27, 1977, Timothy Looker, who had a cast on his leg, was attacked and robbed by two men in front of 11 Ten Broeck Street in Albany, New York, where the defendant resided. The next day, having been informed by the building superintendent that the defendant matched the description of one of the individuals involved in the robbery, two police investigators went to the defendant's apartment. The defendant told them that he had been with two friends on the previous evening. After the officers checked with the two friends, who both denied being with the defendant on the previous evening, they returned to the defendant's apartment and stated that they would like to talk to him further. At that time the defendant was given his *Miranda* warnings, and he then accompanied the police to the police station, where, after approximately 25 minutes, he confessed. Defendant initially contends that the initial stopping and questioning, as well as the subsequent questioning at the police station, were unconstitutional and rendered the subsequent oral confession inadmissible. He argues that the statements were "extracted" from him with "no reasonable suspicion" that he had committed a crime. In our view of the facts, the conduct of the police was in all respects reasonable and complied with the mandates of the Court of Appeals recent decisions in the area of police-citizen encounters (e.g., *People v Stewart*, 41 NY2d 65; *People v De Bour*, 40 NY2d 210; *People v Cantor*, 36 NY2d 106). Different standards must be applied to determine the legality of police conduct depending upon the level of intrusion into an individual's privacy and security. Perhaps Judge Wachtler best summarized the various standards in *People v La Pene* (40 NY2d 210, 223): "The minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality *(People v De Bour, supra)*. The next degree, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure *(People v Cantor*, 36 NY2d, at p 114, *supra; People v Rosemond*, 26 NY2d 101; *People v Rivera*, 14 NY2d 441, 446, and authorities cited therein). Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person (CPL 140.50, subd 1; see *Terry v Ohio*, 392 US 1; *People v Cantor, supra).* A corollary of the statutory right to temporarily detain for questioning is the authority to frisk if the officer reasonably suspects that he is in danger of physical injury by virtue of the detainee being armed (CPL 140.50, subd 3). Finally a police officer may arrest and take into custody a person when he has probable cause to believe that person has committed a crime, or offense in his presence (CPL 140.10)." The first encounter took place when the police, after speaking to the building superintendent, learned that the defendant matched a description of one of the individuals involved in the robbery. It was merely a minimal intrusion and was justified because the police had an "objective credible reason for that interference" *(People v La Pene, supra,* p 223). The second encounter was supported under the police's common-law right to inquire.

They had a "founded suspicion" *(People v La Pene, supra,* p 223), based on the false alibi and their conversation with the building superintendent, that the defendant was involved in the robbery and they were thus entitled to gain explanatory information from him. We reject defendant's contention that he was seized when the police read him his *Miranda* rights. For constitutional purposes, a seizure of a person contemplates a significant interference with an individual's liberty of movement *(People v De Bour,* 40 NY2d 210, 216, *supra; People v Cantor,* 36 NY2d 106, 111, *supra).* The record is devoid of any violent, forcible or other conduct on the part of the police toward the defendant which can be interpreted as a seizure. To the contrary, the record establishes that, after the defendant waived his *Miranda* rights, he willingly accompanied the police to the police station, where he later confessed. With regard to defendant's claim that the sentence imposed was unduly harsh and excessive, we note that, in view of his long record of convictions and the heinous nature of the crime, involving as it did a defenseless victim, we cannot say that the trial court abused its discretion in imposing the maximum sentence. We have examined the remainder of the defendant's contentions and find them to be without merit. Judgment affirmed. Mahoney, P. J., Greenblott, Sweeney, Kane and Staley, Jr., JJ., concur.